### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **C.F. FOLKS, LTD.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:19-cv-01024-TSC |
| v. ) | |
| ) | |
| **MCP II JEFFERSON, LLC**, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### PLAINTIFF C.F. FOLKS, LTD.'S OPPOSITION TO DEFENDANT MCP II JEFFERSON, LLC'S MOTION TO DISMISS

Contrary to Defendant MCP II Jefferson, LLC's ("Defendant") characterization, this is not Plaintiff C.F. Folks, Ltd.'s ("C.F. Folks") third *feckless* effort.  Plaintiff's first action concluded in 2008, resulting in a settlement agreement that explicitly provided C.F. Folks with unfettered access to a handicapped-accessible restroom.  Plaintiff's second action, for declaratory judgment, was dismissed by this Court because "Defendant's alleged future misconduct is not of 'sufficient immediacy and reality' to warrant a declaratory judgment *at this time*."  Memorandum Opinion at 9, *C.F Folks, Ltd. v. DC Jefferson Building, LLC*, Case No. 1:17-cv-01165-TSC (D.D.C. Mar. 31, 2018), ECF No. 11 (hereinafter "Mem. Op.").  The action now before the court alleges new claims and is premised on new, and significant, facts.  To wit, C.F. Folks – a 37 year staple of the community – is now closed following Defendant's refusal to honor the explicit terms of the parties' agreements.  Moreover, because C.F. Folks has sufficiently plead facts that, if accepted as true and viewed most favorably to C.F. Folks, sufficiently plead claims for anticipatory repudiation, default, anticipatory breach, and breach.

I.   **BACKGROUND**

The history of this case is well-known to the Court.  Since 1981, C.F. Folks has operated

as a neighborhood staple, Compl. ¶ 1, serving, for a time, breakfast and lunch and originally

open from 6:30am until 2:30pm Monday through Friday.  Compl. ¶ 9.  C.F. Folks' storied

relationship with its landlord is also well known to the Court.  The lease, which has been

amended four times and remained in effect until the time of C.F. Folks' closing in 2018, is now

the subject of a third litigation.  Compl. ¶¶ 16-37.  Of note, the space leased by C.F. Folks did not

include restrooms suitable for use by restaurant patrons.  Compl. ¶ 13.  Rather, the space

included only a restroom on the G-1 level, which was accessible by a 32-inch wide stairwell that

one accessed by walking through the restaurant's kitchen.  Accordingly, patrons utilized a second

or third-floor restroom in the building where C.F. Folks was located – the commercial real

property located at 1225 19th Street, N.W., known as The Jefferson.  Compl. ¶¶ 3, 13.

Specifically, on or about June 18, 1990, C.F. Folks executed the lease that remained

operative until its closing (the "1990 Lease" and, including all amendments thereto, the "Lease").

Compl.  ¶ 16.  The 1990 Lease provided C.F. Folks with the non-exclusive right to use the G-1

level restroom.  Compl. ¶ 17.  The First Amendment to the Lease, executed in 1996, and the

Second Amendment to the Lease, executed in 2006, did not affect the use of restrooms by C.F.

Folks or its patrons. Compl. ¶¶ 21-22, 25-25.  In 2007, C.F. Folks initiated suit against

Defendant's predecessor in interest.  Compl. ¶ 27.  In 2008, C.F. Folks and Defendant's

predecessor in interest entered into a Settlement Agreement and executed the Third Amendment

to the Lease.  Compl. ¶¶ 28-33.  The Settlement Agreement explicitly acknowledged the party's

practice of providing C.F. Folks with unfettered access to a handicap-accessible third-floor

restroom unless and until C.F. Folks (1) interferes with other tenants in the building, or (2) fails

to maintain the G-1 level restroom as required by the Settlement Agreement and the Lease. Compl. ¶ 29.  The Settlement Agreement further provides that in no event may Defendant restrict access to the third-floor restroom by customers who, by reason of handicap or other disability, require a handicap-accessible restroom.  Comp. ¶ 29.  The Fourth Amendment to the Lease, executed in 2010, did not affect the use of restrooms by C.F. Folks or its patrons.  Compl. ¶ 36. Of note, neither the 1990 Lease, its amendments, nor the Settlement Agreement limited C.F. Folks operating hours.  Compl. ¶¶ 19, 23, 26, 31 34, 37.

Since this Court disposed of C.F. Folk's prior action, several events have occurred which give rise to the claims in this action.  First, on or about August 13, 2018, Defendant acquired The Jefferson and prompted a renewed discussion with Defendant and its counsel concerning C.F. Folks again operating for breakfast and beginning dinner operations.  Compl. ¶¶ 55-57. However, on or about October 24, 2018, Defendant wrote C.F. Folks' owner to advise that it would only permit the restaurant to extend its operating hours if it agreed to incur an additional cost of "$48,500 per year" to account for additional security that Defendant unilaterally deemed necessary.  In writing, Defendant acknowledged, "this is a heavy cost for you to absorb." Compl. ¶ 58;  Email from Andrew Dolinsky, Marcus Partners, to Art Carlson, C.F. Folks (Oct. 24, 2018) (attached hereto as Exhibit A).  Defendant's written communication was an explicit refusal to provide C.F. Folks the unfettered access to a handicapped-accessible restroom, a restroom to which it was entitled access under the Lease and Settlement Agreement.

Second, C.F. Folks has closed.  On or about November 9, 2018, C.F. Folks stopped serving customers at its restaurant.  Compl. ¶ 63.  Thereafter, on December 10, 2018, Defendant, through its attorney, wrote C.F. Folks advising that it was holding C.F. Folks in breach of the Lease by shutting its doors, no matter how temporarily.  Compl. ¶ 69.  And in response, on

December 31, 2018, C.F. Folks, through its attorney, advised Defendant that it had repudiated and/or breached the Lease and Settlement Agreement, that C.F. Folks had nevertheless complied with its obligations delineated in Defendant's December 10 demand letter, including Defendant's demand that C.F. Folks vacate the premise.  Comp. ¶ 70.

## II.   <u>ARGUMENT</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of an action where the complaint fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) (2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  The facial plausibility requirement "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  Although a complaint "does not need detailed factual allegations," the factual allegations provided "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678; *see also Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 129-30 (D.C. Cir. 2012).

Here, C.F. Folks has sufficiently plead facts to support its claims for breach of the Lease and Settlement Agreement, or, in the alternative, anticipatory breach of the Lease and anticipatory breach of the Settlement Agreement.

A.  _C.F. Folks Has Sufficiently Pleaded Facts to Establish Article III Standing._[1]

Article III standing requires a determination that a plaintiff:  (1) has suffered an 'injury in fact' that is concrete and particularized, and actual or imminent rather than conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  _Lujan v. Defenders of Wildlife_, 504 U.S. 555, 560-61 (1992). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." _Warth v. Seldin_, 422 U.S. 490, 501-02 (1975).

Defendant attempts to conflate this action, which arises following Defendant unequivocally and positively advising C.F. Folks that its patrons would not have access to a handicap-accessible restroom were the restaurant to again serve breakfast and/or begin serving dinner, a demand that C.F. Folks vacate the premises, and C.F. Folks' permanent closure, with the prior action dismissed by this Court.[2]  In the prior 2017 action, C.F. Folks sought a

---

[1] Although C.F. Folks submits that it has pleaded facts sufficient to support Article III standing before this Court, it notes that it is the Defendant who bears the burden of establishing the same.  Although "[a] federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action,'" _Warth v. Seldin_, 422 U.S. 490, 501-02 (1975) (quoting _Linda R. S. v. Richard D._, 410 U.S. 614, 617 (1973)), C.F. Folks did not seek "the invocation of federal-court jurisdiction" nor to "justify exercise of the court's remedial powers on [its] behalf." _Id._ at 498-99.  Rather, C.F. Folks filed suit in the Superior Court of the District of Columbia, a court constituted under Article I of the Constitution and thus not expressly subject to Article III's standing requirements.  _See Grayson v. AT&T Corp._, 15 A.3d 219, 232 n. 29 (D.C. 2011) (_en banc_) ("[W]e do not need to address and we take no position on whether Congress by statute has imposed Article III's standing requirement on the local courts of the District of Columbia.").  Because Defendant sought removal to this Court, it now bears the burden of establishing that it has Article III standing to consider C.F. Folks' claims. _See Collier v. SP Plus Corp._, 889 F.3d 894, 896 (7th Cir. 2018) ("As the party invoking federal jurisdiction, [Defendant] had to establish that all the elements of jurisdiction – including Article III standing – existed at the time of removal.").  To that end, C.F. folks submits that were this Court to conclude that C.F. Folks lacks standing to pursue its claims in Federal Court, the appropriate remedy would be to remand this action to the Superior Court of the District of Columbia, the venue in which C.F. Folks originally filed its claims.

[2] Indeed, perhaps not coincidentally, Defendant fails to reference standing, does not cite Article III, and has not lodged a Motion to Dismiss for lack of subject matter jurisdiction.  Rather, Defendant characterizes its argument as seeking dismissal of C.F. Folks' claims for failure to state a claim pursuant to which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Specifically, Defendant asserts, "[t]he Complaint

declaratory judgment against Defendant's predecessor in interest.  Specifically, C.F. Folks asked

this Court to declare that "Defendant's conduct to be in violation of the express terms of the

parties' settlement agreement and in contradiction to the previously-described, well-understood

custom between the parties" and that "Defendant has unreasonably and arbitrarily exercised its

contractual discretion to condition Plaintiff's use of the third floor bathrooms in a manner that

has directly harmed Plaintiff's business interests within its restaurant/café."  Complaint for

Declaratory Judgment & Injunctive Relief at 11, 16, *C.F. Folks, Ltd. v. DC Jefferson Building,*

*LLC*, Case No. 2017 CA 003218 (D.C. Super. Ct. May 9, 2017).  However, this Court found

declaratory judgment premature because C.F. Folks had not taken sufficient steps to indicate that

it was expanding its operational hours.  Mem. Op. at 9.  In its ruling, the Court focused on

whether C.F. Folks presented a "controversy" within the meaning of the Declaratory Judgment

Act and Article III, which required that C.F. Folks "'show that there is a substantial controversy,

between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment.'"  *Hoffman v. Dist. of Columbia*, 643 F. Supp. 2d 132, 140

(D.D.C. 2009) (*quoting Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)), *cited in*

Mem. Op. at 7.

On the other hand, as this Court acknowledged, C.F. Folks had not then brought an action

for anticipatory breach.  Mem. Op. at 9.  Here, Defendant has explicitly refused to provide C.F.

Folks access to a handicap-accessible restroom during its proposed operating hours, Defendant

has demanded that C.F. Folks close its restaurant, and C.F. Folks has now closed.  Compl. ¶¶ 58,

---

is otherwise devoid of any other allegations that C.F. Folks had taken significant steps to prepare to expand its business for evening hour service, and they fall short of the Court's observations, conclusions and implied suggestions on this issue."  Mem. Opp. at 17.  Because this Court is obligated to consider whether it possesses standing to consider the case or controversy before it, [insert cite], C.F. Folks nevertheless addresses the issue.

69, 70.  These harms are hardly speculative.  *See Lujan*, 504 U.S. at 561; *see also Id.* at 564 n. 2

("[Speculative] has been stretched beyond the breaking point when, as here, the plaintiff alleges

only an injury at some indefinite future time, and the acts necessary to make the injury happen

are at least partly within the plaintiff's own control.").  Whereas, the Court found, "[C.F. Folks]

asks the court to address conduct that has yet to occur; Defendant has not yet exercised its

contractual discretion to limit or condition [C.F. Folks'] use of the third-floor bathrooms,"  Mem.

Op. at 7, in the year since the Court issued its Order, Defendant has unequivocally and positively

stated its intention to refuse to permit C.F. Folks to access the third floor restroom as provided in

the Settlement Agreement.  Compl. ¶ 58.

> B.   *C.F. Folks Pleaded Facts Sufficient to Support a Claim for Breach of the Lease and the Settlement Agreement.*

To establish a breach of contract (including a lease), a plaintiff must allege facts sufficient

to prove:  "(1) a valid contract between the parties; (2) an obligation or duty arising out of the

contract; (3) a breach of that duty; and (4) damages caused by the breach."  *See Tsintolas Realty*

*Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).  A breach of contract is "an unjustified failure to

perform all or any part of what is promised in a contract entitling the injured party to damages."

*Fowler v. A&A Co.*, 262 A.3d 344, 347 (D.C. 1970).

Notably, Defendant does not challenge the sufficiency of C.F. Folks' pleading the

existence of a contract, that C.F. Folks is entitled to unfettered access to a handicap-accessible

bathroom under either the Lease or the Settlement Agreement,[3] or a breach of that obligation.[4] And Defendant's apparent assertion that C.F. Folks failed to sufficiently allege damages - "C.F. Folks has not and cannot allege damages occasioned by [Defendant's] alleged conduct," Mot. Dismiss at 18 – is contradicted by their acknowledgement that damages are in fact alleged: "C.F. Folks now comes to this Court claiming that [Defendant] is responsible for future lost profits . . . ." Mot. Dismiss. at 18. Defendant undoubtedly contends that C.F. Folks may not be able to *prove* its damages, but it cannot legitimately assert that that C.F. Folks failed to plead that it has incurred damages. *See* Compl. ¶¶ 77, 83, 89, 94. At this early juncture, C.F. Folks has satisfied its obligation to "state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S.at 678.

C.    *C.F. Folks Has Pleaded Facts Sufficient to Support Claims for Anticipatory Repudiation and Anticipatory Breach of the Settlement Agreement.*

Assuming *arguendo* that C.F. Folks has not pleaded facts sufficient to support claim for breach of the Lease and/or the Settlement Agreement, Defendant's Motion to Dismiss must nevertheless be denied because C.F. Folks has pleaded facts sufficient to establish that, in the alternative, Defendant anticipatorily breached the Lease and/or the Settlement Agreement. Put

---

[3] To be sure, Defendant takes issue with what the Lease and Settlement Agreement obligated it to do: "[n]owhere in the Lease, the Amendments, or the 2008 Settlement Agreement do [Defendant's] predecessors in interest grant C.F. Folks 'unfettered access' to the third floor restrooms" Opp. at 15. This assertion, however, challenges what the contracts in question require Defendant to do, not whether C.F. Folks has sufficiently pleaded facts to support a claim that Defendant breached those agreements. Facts which, this Court must accept as true and construe in favor of C.F. Folks. *See Warth*, 422 U.S. at 501.

[4] Again, Defendant takes issue with C.F. Folks' assertion that it breached any obligation: "Plaintiff correctly does not allege that [Defendant] interfered with its patrons' right to use the third floor restrooms during [C.F. Folks'] lunchtime hours of operation. Stated differently, C.F. Folks has failed to allege that [Defendant] interfered with its *existing* business operations in any way." Mot. Dismiss at 16. This mischaracterization of C.F. Folks' claim – that explicitly refusing to permit C.F. Folks patrons unfettered access to handicap-accessible restroom constitutes a breach of the Lease and Settlement Agreement – cannot contradict the reality that C.F. Folks has in fact alleged this element of a breach of contract. Defendant my not like C.F. Folks' characterization of the parties' agreement, but this Court is obligated to accept them as true and construe them in favor of C.F. Folks. *See Warth*, 422 U.S. at 501.

differently, if alleging that Defendant explicitly advised that C.F. Folks patrons could not enjoy

unfettered access to a handicap-accessible bathroom does not constitute a breach of either the

Lease and/or the Settlement Agreement, then Defendant's positive, unconditional, and

unequivocal declaration constitutes anticipatory repudiation and breach, respectively.

With respect to C.F. Folks' claim of anticipatory repudiation, D.C. Code § 28:2A-402

provides:

> If either party repudiates a lease contract with respect to a performance not yet
> due under the lease contract, the loss of which performance will substantially
> impair the value of the lease contract to the other, the aggrieved party may: . . . (3)
> Resort to any right or remedy upon default under the lease contract or this article
> [and may] suspend performance. . . .

Similarly, with respect to C.F. Folks' claim of anticipatory breach, D.C. Code § 28:2:610

provides:

> When either party repudiates the contract with respect to a performance not yet
> due the loss of which will substantially impair the value of the contract to the
> other, the aggrieved party may . . . (b) resort to any remedy for breach . . . and (c)
> in either case suspend his own performance . . . .

Anticipatory repudiation or breach is effectuated when a party makes a "positive,

unconditional, and unequivocal declaration of fixed purpose not to perform the contract in any

event or at any time." *Dingley v. Oler*, 117 U.S. 490, 502 (1886). "To constitute repudiation by

conduct, the party's conduct must be voluntary and affirmative and must make it actually or

impossible for the party to perform." Restatement (Second) of Contracts § 250 cmt b. *See also*

10 Arthur Linton Corbin and Joseph M. Perillo on Contracts, § 54.1 (2018) ("An anticipatory

breach of contract by a promisor is a repudiation of his contractual duty before the time fixed in

the contract for his performance has arrived. Such a repudiation may be made either by word or

by act. If the promisor makes a definite statement to the promisee that he either will not or

9

cannot perform his contract, this is an anticipatory repudiation that can be treated as an anticipatory breach unless the promisor had some justifying cause for his statement.").

D.C. Courts have consistently held that "for a repudiation of a contract by one party to be sufficient to give the other party the right to recover for breach, the repudiating party must have communicated, by word or conduct, unequivocally and positively its intention not to perform." *Order of AHEPA v. Travel Consultants, Inc*., 367 A.2d 119, 125 (D.C. 1976), *cert. dismissed*, 434 U.S. 802 (1977). *See Reiman v. Int'l Hosp. Grp.*, 614 A.2d 925, 928 (D.C. 1992) (finding that defendant anticipatorily repudiated when defendant refused to proceed under a contract and demanded new conditions). Similarly, anticipatory repudiation occurs when a party makes "an absolute and unequivocal refusal to perform" the contract. *Sys. Council Em-3 v. AT&T Corp.*, 972 F. Supp. 21, 40 (D.D.C. 1997) (*quoting United Corp. v. Reed, Wible & Brown*, 626 F. Supp. 1255, 1257 (D.V.I. 1986)). And D.C. Courts have acknowledged repudiation where one party insists upon conditions not otherwise contemplated by the underlying contract. *Reiman*, 614 A.2d at 928.

In its Complaint, C.F. Folks alleges that the parties' course of performance under the Lease provided C.F. Folks unfettered access to a handicap-accessible restroom within The Jefferson. Compl. ¶ 73. C.F. Folks further alleges that the Settlement Agreement explicitly provided it with unfettered access to a handicap-accessible restroom. Compl. ¶ 85. Because Defendant has positively, unconditionally, and unequivocally advised that it will not provide C.F. Folks' patrons with unfettered access to a handicap-accessible restroom at all times, Defendant has acknowledged it is impossible for it to perform under the Lease. Specifically, C.F. Folks alleges that Defendant had advised that unfettered access to a handicap-accessible restroom would require C.F. Folks to pay for a security guard to remain onsite at The Jefferson during C.F.

10

Folks' operating hours and even then only if C.F. Folks personnel escort patrons to and from the handicap-accessible restroom.  Compl. ¶¶ 75, 87.  Both conditions are new: neither is contemplated by the Lease nor Settlement Agreement.  Compl. ¶¶ 76, 88.  *See Reiman*, 614 A.2d at 928 (affirming the trial court's finding that the defendant anticipatorily repudiated when defendant refused to perform under a contract absent the plaintiff meeting new conditions).  As a direct and material consequence of Defendant's repudiation of the Lease and Settlement Agreement, C.F. Folks has been forced to shutter its doors after 37 years as a neighborhood staple, suffering incidental and consequential damages in an amount to be determined at trial, including, but not limited to, lost profits (including dinner and breakfast profits as well as alcohol sales) as well as the inability to market and sell the business to known, interested buyers.

Moreover, this case is akin to those D.C. Courts have acknowledged constituting repudiation.  For example, in *Order of AHEPA*, the D.C. Court of Appeals found that the question of anticipatory repudiation was properly submitted to the jury when one party had (1) ordered the other to not act under the contract, (2) pressed the other to change terms of the contract, and (3) maintained that the other party could not act under the contract. *Order of AHEPA*, 367 A.2d at 125.  Similarly, in *Ingber v. Ross*, 479 A.2d 1256 (D.C. 1984), the D.C. Court of Appeals found that there was anticipatory repudiation when the defendant informed the plaintiff that he was "freezing" the plaintiff's right to buy into the medical practice. When the plaintiff wrote the defendant to indicate that he was buying into the practice, the defendant again indicated that his "agreement with the corporation had been 'frozen.'" *Id.* at 1263.  The Court of Appeals found the record supported the trial court's finding that the defendant anticipatorily repudiated the contract.

As in *Ingber*, Defendant's actions were such that it effectively ordered C.F. Folks to not fully exercise its rights under the lease.  Defendant's actions were unequivocal – Defendant

repeatedly ignored C.F. Folks' attempts at fully exercising its rights under the Lease and unequivocally stated that it would not meet its obligation under the Lease and Settlement Agreement by providing C.F. Folks's patrons with unfettered access to handicap-accessible restroom.  Specifically, on October 24, 2018, Andrew Dolinsky, on behalf of Defendant, wrote C.F. Folks about its options moving forward; Mr. Dolinsky wrote that C.F. Folks could modify the space of the existing premises at significant cost to C.F. Folks, extend security hours at the cost of $48,500 to C.F. Folks, or C.F. Folks could cede the space to another tenant.  Ex. A.  These options demonstrate Defendant's unequivocal refusal to permit C.F. Folks to expand its operating hours.[5]

Finally, C.F. Folks remained willing to perform under the contract.  "[T]o successfully state an anticipatory repudiation defense, a party must also prove that it was able to perform under the contract."  *Bricks, Blocks & Concrete Co. v. Frontier Ins. Co.*, No. 99-7251, 2000 U.S. App. LEXIS 38663, at *7 (D.C. Cir. 2000).  C.F. Folks willingness and ability to expand its hours to include breakfast and dinner service has been established through prior investments made by C.F. Folks in its space at The Jefferson.  In 2013, C.F. Folks built an enclosure around its sidewalk café to provide for additional seating for patrons.  Compl. ¶ 35.  C.F. Folks invested significant capital in expanding its electrical panel at its own expense.  Compl. ¶ 41.  Defendant

---

[5] The necessity of handicap-accessible restroom access is not speculative.  It is well-established that D.C. restaurants must have a handicap-accessible restroom on site.  Defendant argues in support of its Motion that:  "The Third Amendment further specifically states that if 'any governmental agency requires Tenant to open a second devoted restrooms, non-exclusive use of the addition[al] restrooms on the G-1 level will be granted to Tenant.'" Mot. Dismiss at 13.  However, such additional access would not satisfy C.F. Folks' obligations to provide its patrons handicap-accessible restroom access.  For starters, the G-1 level restrooms were accessible only through C.F. Folks kitchen.  Moreover, as recently as April 2019 a nearby establishment's doors were shuttered by the D.C. Health and Regulation Licensing Administration because the restaurant did not have an accessible bathroom.  The Food Establishment Inspection Report stated, "The establishment does not have a restroom.  The available restroom is located in the basement of the building."  *Food Establishment Inspection* Report, D.C. Health Regulation and Licensing Administration (Mar, 9, 2018) *available at https://tinyurl.com/yxjuek8m.*

characterizes these actions as merely speculative support of C.F. Folks' willingness to expand its operations. Mot. Dismiss at 17-18. Defendant will yet have the opportunity to argue the same to a jury – at this juncture it cannot legitimately deny that C.F. Folks has pleaded its willingness to perform under the Lease and Settlement Agreement. *See* Compl. ¶¶ 12, 35, 38, 39, 40, 41, 42, 43, 44, 45, 56. Moreover, what Defendant asks C.F. Folks to do is to expend tens of thousands of dollars to demonstrate its seriousness in expanding its operating hours in the face of an explicit statement that Defendant will not permit the same. Because C.F. Folks has plead sufficient facts of its willingness to perform under the Lease, the Court should deny Defendant's Motion.

Because Defendant's actions were unequivocal and positive in refusing to honor the Lease and the Settlement Agreement, and C.F. Folks was able to perform under the contract, viewing the facts most favorably to C.F. Folks, the Court should find that C.F. Folks has met its obligation to state a claim upon which relief may be granted and the Court should deny Defendant's Motion to Dismiss.

## III.   C.F. FOLKS' CLAIMS ARE NOT TIME-BARRED.

Defendant argues that C.F. Folks' claims of breach and/or anticipatory repudiation breach of either the Lease and/or the Settlement Agreement are time barred. The statute of limitations for a claim for default under a lease and breach of contract is four years and three years, respectively. *See* D.C. Code Ann. § 28:21A-506(a), D.C. Code Ann. § 12-301. Importantly, "[i]n an action for breach of a contract or lease the statute of limitations runs from the time of the breach." *Bembery v. District of Columbia*, 758 A.2d 518, 520 (D.C. 2000). *See also Perry Capital LLC ex rel. Inv. Funds v. Mnuchin*, 864 F.3d 591, 632 (D.C. Cir. 2017) ("In other words, anticipatory breach is 'a doctrine of accelerated ripeness' because it 'gives the plaintiff the *option* to have the law treat the promise to breach [or the act rendering performance impossible] as a

breach itself.'" (emphasis added) (*quoting Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr.*, 594 F.3d 285, 294 (4th Cir. 2010)).  In actions for anticipatory repudiation, "[t]he aggrieved party is entitled to sue either when the anticipatory repudiation occurs or at the later time for performance under the contract.  The time of accrual consequently depends on whether the injured party chooses to treat the anticipatory repudiation as a present breach."  Calvin W. Corman, Limitations of Actions §7.2.1, at 488.  "In essence, this rule gives the plaintiff an option – sue now (if the contract has been repudiated in anticipation of nonperformance) or sue later (at the time of nonperformance).  *Eastbanc v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1004 (D.D.C. 2008).

Plaintiff's claims are not time barred.  As Defendant points out in its Motion, in 2017, Plaintiff sought a declaratory judgment against Defendant's predecessor in interest.  The Court found that a declaratory judgment was improper because the issue was not yet justiciable.  In holding that the issue was not justiciable, the Court noted that any anticipatory breach on part of Defendant's predecessor in interest "is not of 'sufficient immediacy or reality' to warrant a declaratory judgment."  Mem. Op. at 9.  As this Court has recognized, "a declaratory judgment action 'serves to set controversies at rest *before they lead to repudiation of obligations*' [and] numerous courts have concluded that neither the filing of a declaratory judgment action nor the allegations made in support of such an action can form the basis of a claim for anticipatory repudiation."  *Landwehr v. FDIC*, 734 F.Supp. 2d 161, 169 (D.D.C. 2010) (citations omitted) (*quoting Babb v. Superior Court*, 479 P.2d 379, 383 (Cal. 1971)).

## **CONCLUSION**

For the foregoing reasons, and because C.F. Folks has sufficiently pleaded facts that, if accepted as true and viewed in light most favorable to the C.F. Folks, entitle it to relief, the Court

should deny Defendant's Motion.  Alternatively, should the Court conclude that it lacks standing

to entertain Plaintiff's claims, it should remand this action to the Superior Court of the District of

Columbia.

Dated: May 3, 2019                    Respectfully submitted,

                                      _____/s/ Stanley E. Woodward, Jr._____
                                      Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                      John R. Jacob (D.C. Bar No. 444412)
                                      Akin Gump Strauss Hauer & Feld LLP
                                      1333 New Hampshire Avenue NW
                                      Washington, D.C. 20036
                                      Telephone: 202.887.4000
                                      Facsimile: 202.887.4288
                                      stanley.woodward@akingump.com
                                      jjacob@akingump.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **C.F. FOLKS, LTD.**, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:19-cv-01024-TSC |
| v. | ) |
| | ) |
| **MCP II JEFFERSON, LLC**, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd of May, 2019, I served the foregoing on all counsel

of record via this Court's CM/ECF system.


Dated: May 3, 2019                         Respectfully submitted,

                                         _/s/ Stanley E. Woodward, Jr._
                                         Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                         John R. Jacob (D.C. Bar No. 444412)
                                         Akin Gump Strauss Hauer & Feld LLP
                                         1333 New Hampshire Avenue NW
                                         Washington, D.C. 20036
                                         Telephone: 202.887.4000
                                         Facsimile: 202.887.4288
                                         stanley.woodward@akingump.com
                                         jjacob@akingump.com